■ MORRIS CRAMER, Appellant, v DENNIS M. ENGLERT et al., Respondents. [692 NYS2d 212] —Carpinello, J. Appeal from an order of the Supreme Court (Teresi, J.), entered July 24, 1998 in Albany County, which, *inter alia*, granted defendants' motion for summary judgment dismissing the complaint.

At issue on appeal is the alleged malpractice of attorneys (defendants) who were hired to sue other attorneys for legal malpractice and breach of contract. Although the question of the alleged malpractice of the first attorneys was previously before this Court in *Cramer v Spada* (203 AD2d 739, *lv denied* 84 NY2d 809, *cert denied* 514 US 1055), we repeat the underlying facts to the extent they are essential to a resolution of this appeal.

In 1982, plaintiff retained attorneys Eugene Spada and Martin Lazarow to represent him in the sale of a bowling alley. Plaintiff ultimately entered into an agreement with Robert Daubney Bowling Enterprises, Inc. (hereinafter Daubney) to sell all of his shares of stock in Cardoray Corporation (of which he was the sole shareholder) for $50,000 in cash and an additional $296,000 to be paid in accordance with the terms of a promissory note, in monthly installments with annual interest at 13% for six years.. In addition, Daubney agreed to assume existing debts of Cardoray, not to exceed $300,000, and to pay plaintiff, as well as each of his two daughters, $802.96 monthly for six years for "consulting services". Notably, while Cardoray owned the assets of the bowling alley then commonly known as the "Bowlers Club", it did not own the building in which the business was operating, the premises having been leased.

---

**2.** The other officer was no longer in the State's employ at the time of trial.

There is some indication in the record that the bowling alley, which had been operated at the same location for 20 years, was in need of refurbishing at the time of the sale.

Payments under the promissory note and the consulting agreement were made until Cardoray filed a petition in bankruptcy in November 1984. At that time, plaintiff was under the impression that his attorneys, Spada and Lazarow, had "protected" him at the sale of the business by preparing sufficient documentation for him to retain a security interest in the assets of the business as collateral for the payments due under the note. It was subsequently established in the ensuing bankruptcy proceeding that in fact, although Spada and Lazarow had filed a UCC-1 financing statement, no formal security agreement had ever been executed as part of the closing documentation, resulting in a ruling by the Bankruptcy Court that plaintiff was an unsecured creditor, a determination upheld on appeal (see, Cramer v Cardoray Corp. [In re Cardoray Corp.], Bankr, ND NY, June 20, 1986, Mahoney, J., affd US Dist Ct, ND NY, Dec. 22, 1986, McAvoy, J., affd US Ct of App, 2d Cir, May 5, 1987). In the bankruptcy proceeding, the assets of the business were sold with all of the proceeds going to secured creditors, leaving unsatisfied a balance due plaintiff on the promissory note in excess of $168,000.

Plaintiff then retained defendants in the instant action to sue Spada and Lazarow on the grounds that the latter had committed malpractice in their representation of him in the sale of his business. However, at the close of plaintiff's proof in that trial, Supreme Court (Lomanto, J.) granted a motion to dismiss the complaint on the ground that plaintiff had failed to prove a prima facie case. Although this Court disagreed with so much of Supreme Court's ruling as dealt with plaintiff's expert witness testimony (Cramer v Spada, supra, at 740-741), we found this error did not require reversal as the malpractice alleged in that lawsuit (i.e., the failure to execute a security agreement) could not have resulted in any damage to plaintiff because the proceeds of sale of the equipment were insufficient to satisfy the debts of other creditors whose security interests would have been superior to plaintiff's even if a security agreement had been executed in his favor at the closing.

In the instant action, plaintiff now claims defendants themselves committed malpractice in the manner in which they prepared and tried the first malpractice case. In response to cross motions for summary judgment, Supreme Court granted defendants' motion and dismissed the complaint. The court determined that defendants could not have committed

malpractice in their pursuit of Spada and Lazarow because this Court had already held that plaintiff had not been damaged by the latter's claimed malpractice, damages being an essential element of every malpractice claim (*see, Walter D. Peek, Inc. v Agee*, 235 AD2d 790, *lv denied* 89 NY2d 815; *Mendoza v Schlossman*, 87 AD2d 606).

We begin our analysis by distinguishing between the claims in the two separate malpractice actions. In the first action, the *claimed* malpractice was the failure of Spada and Lazarow to obtain a security agreement at the 1982 closing. In the second action, plaintiff has called into question the quality of representation he received from defendants, who he hired to review his prior representation and to commence an action if in fact their review revealed that the professional services rendered were substandard. We note that in evaluating the services rendered by Spada and Lazarow, defendants were not necessarily limited to the security agreement issue which had caused plaintiff to retain them in the first instance.

With respect to that issue, we have conducted our own review of the record without giving our decision in the first action collateral estoppel effect. Plaintiff has clearly implicated the competence of his counsel in the first action, a factor to be considered in determining whether a party has "had his [or her] day in court" (*Schwartz v Public Adm'r of County of Bronx*, 24 NY2d 65, 72). Upon this review, which included the record in the prior appeal, we are compelled to conclude that Supreme Court erred in granting defendants summary judgment as there exist two possible claims for malpractice which cannot be disposed of as a matter of law.

The first claim, relating to the failure to obtain a security agreement, requires an analysis of the bankruptcy proceeding.* Under the auspices of the Bankruptcy Court, $45,000 worth of equipment was liquidated with the proceeds of sale going to Marine Midland Bank to partially satisfy an indebtedness then in excess of $79,000. This indebtedness was secured by a security agreement executed in 1981 when plaintiff still controlled Cardoray. Clearly, that security interest was superior to any which plaintiff might have acquired at his 1982 closing. Also under the auspices of the Bankruptcy Court, 25 newly acquired automatic scorers were sold for $180,000. These proceeds were paid to Merrill Lynch Industrial Resources in partial satisfaction of an indebtedness then in excess of

---

* While this claim was generally raised on the prior appeal, the *precise* legal issue hereinafter developed was *not* raised by defendants, who represented plaintiff on that appeal, and therefore was not before this Court.

$400,000. Although Merrill Lynch's security interest in this equipment was not obtained until 1983 (after the sale of Cardoray to Daubney), its security interest would still have been superior to any security interest that might have been granted to plaintiff as it enjoyed a purchase-money priority (see, UCC 9-312 [4]).

More problematic are the $105,000 proceeds from the sale of 50 pinspotters and 50 bowling lanes also liquidated under the auspices of the Bankruptcy Court, which proceeds were remitted to Merrill Lynch. Although Merrill Lynch was granted a security interest in this equipment at the time it financed the installation of the new automatic scorers, this equipment cannot qualify for purchase-money priority as it was not acquired with Merrill Lynch funds (see, UCC 9-107). While Merrill Lynch had a purchase-money security interest in the automatic scorers and a general security interest in the pinspotters and bowling lanes (see, In re Ionosphere Clubs, 123 Bankr 166), its general security interest taken in 1983 on the pinspotters and bowling lanes would not have had priority over plaintiff's security interest in this equipment had he been granted one at the 1982 closing (see, UCC 9-312 [5]). And, although Marine Midland (which had subordinated its security interest in this equipment to Merrill Lynch) would clearly have been next in line before plaintiff for this $105,000 proceeds, its indebtedness did not exceed $150,000 ($45,000 + $105,000). Accordingly, we cannot say that, as a matter of law, defendants cannot be found liable in malpractice because the conduct of Spada and Lazarow resulted in no damage to plaintiff.

In addition to the issue of the missing security agreement (and any possible proximate damages), there exists another potential claim for malpractice against defendants. Because the $45,000 proceeds of sale of the equipment which had been pledged to Marine Midland were inadequate to satisfy its debt in full, Marine Midland sued plaintiff on his guaranty of the indebtednesses of Cardoray. Marine Midland prevailed in obtaining a judgment against plaintiff because, after the sale to Daubney, his·personal guaranty was not revoked in writing (see, Marine Midland Bank v Daubney Bowling Enters., 136 AD2d 963, lv denied 72 NY2d 810). Although a letter from Spada and Lazarow at the 1982 closing effecting a termination of his guaranty would not have relieved plaintiff of his personal obligation to pay any Cardoray indebtedness existing at that time, such a letter would have insulated him from personal liability on any new indebtednesses incurred by Daubney after the sale (see, 63 NY Jur 2d, Guaranty and Suretyship, § 153).

We cannot say as a matter of law that the failure to send such a letter clearly did not fall below the reasonable skills possessed by a member of the legal profession (*see, Grago v Robertson*, 49 AD2d 645, 646). As to possible damages proximately related to this failure, while there is an indication in the record that Cardoray was indebted to Marine Midland in an approximate amount of $69,000 at the time of the sale, we are unable to ascertain with any precision whether the Marine Midland debt at the time of Cardoray's subsequent bankruptcy consisted exclusively of renewals of pre-1982 debt or whether it included, at least in part, new borrowings initiated by Daubney.

For the foregoing reasons, defendants' motion for summary judgment dismissing the complaint should have been denied. Because of the factual issues previously identified, summary judgment in plaintiff's favor was equally inappropriate.

Cardona, P. J., Mercure, Spain and Graffeo, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted defendants' motion for summary judgment; said motion denied; and, as so modified, affirmed.